IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSLYVANIA

| | |
|---|---|
| SHARON SCHALL: <br> 470 NORTH EAST 5TH AVE. APT. 3207 <br> FORT LAUDERDALE FL 33301 <br><br> Plaintiff, <br><br> v. <br><br> BIOCOMPATIBLES INTERNATIONAL LLC <br> FIVE TOWER BRIDGE, SUITE 800300 BARR HARBOR DRIVE <br> WEST CONSHOHOCKEN, PA 19428 <br><br> And <br> BTG PLC (NO. 2670500), BTG INTERNATIONAL LTD (NO. 02664412), PROVENSIS LTD (NO. 3694409), <br><br> BTG MANAGEMENT SERVICES LTD (NO. 2459087), <br> PROTHERICS MEDICINES DEVELOPMENT LTD (NO.1939643), <br><br> BTG INTERNATIONAL INC. <br> AND PROVENSIS INC., <br> BOTH OF FIVE TOWER BRIDGE, <br> 300 BARR HARBOR DRIVE, <br> SUITE 800, <br> WEST CONSHOHOCKEN, PA 19428-2998, USA <br><br> BIOCOMPATIBLES, INC., <br> 115 HURLEY ROAD, <br> BUILDING 3F, <br> OXFORD, CT 06478 USA <br> EKOS CORPORATION, <br> 11911 NORTH CREEK PARKWAY S., <br> BOTHELL, WA 98011 USA <br><br> DEFENDANT. | CIVIL ACTION <br><br> No. 156088 <br><br> **JURY TRIAL DEMANDED** |

**AMENDED CIVIL COMPLAINT**

Plaintiff, Sharon Schall, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I.   Introduction

1. Plaintiff has initiated this action to redress violations by Biocompatibles Inc., which is a specialist healthcare company with approximately 250 U.S. based employees, (*hereinafter* referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq*.) and the Pennsylvania Human Relations Act.  As a direct consequence of Defendant's unlawful actions, Plaintiff has suffered harm to her career as well as her personal and emotional health and as such seeks damages as set forth herein.

### II.   Jurisdiction and Venue

2. Plaintiff is an adult resident of Florida with an address as set forth above.

3. Defendant Biocompatibles International, LLC ("Defendant") is a company with U.S. headquarters located at the above-captioned address in Pennsylvania and engages in the business of medical device sales throughout the U.S. and internationally.

4. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as the federal claims asserted herein.

4.Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district.

5.Plaintiff has properly exhausted her administrative remedies (with respect to her Title VII claims) by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.Parties

6.Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

### IV.Factual Background

7.The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.Plaintiff is a female, with an BA/BS/MBA Magna Cum Laude from Clarion University.

9.Plaintiff was hired to work for Defendant as a Territory Sales Manager.

10.Plaintiff worked for Defendant from October 2011 until May 31st, 2014 working in the Oncology Sales Division covering the State of Florida selling the product Therasphere as well as LC Beads, which is used for primary hepatocellular carcinoma (HCC).

11.Prior to working for Defendant Plaintiff sold the LC Bead product for Angiodynamics from 2009.  Defendant acquired Angiodynamics in 2011 retaining Plaintiff as a top salesperson in Florida for LC Beads.  During the summer of 2013 Defendant acquired EKOS and Nordian.

12. During Plaintiff's employment with Defendant, Plaintiff was supervised by Christopher Gennaro and by Lance Funderbuck. Both Mr. Gennaro and Mr. Funderbuck were Regional Managers within Defendants organization.

13. During Plaintiff's employment with Defendant, Plaintiff was subjected by Defendant to sexual harassment, discrimination (religion and gender), and retaliation (constructive discharge, failure to rehire, failure to promote, disparagement to future employer), by Defendant.

14. Plaintiff was a top performing Territory Sales manager, and had developed the South Florida to deliver significant revenue to Defendant's organization. Plaintiff was responsible for introducing LC Beads as the treatment of choice for Oncology in Florida and establishing a network of strong customer relationships across the state. She had established a solid reputation within the medical profession in her area of expertise, so much so that when Nordian was acquired she was able to demonstrate more success compared to other representatives in selling both Therasphere and LC Beads (which if not positioned correctly are deemed competitive products).

15. Unlike Plaintiff's male co-workers, Plaintiff, 1) had Brad Snow, Senior Vice President of U.S. Sales Division conduct ride alongs with her in her territory 2) was subjected to unwanted physical advances of Mr. Snow; 3) was subjected to unwanted physical touching of her person, while having her drive Mr. Snow would touch her thighs, rub her arms while driving; 4) Mr. Snow repeatedly asked Plaintiff to dinner, and on unrelated work excursions 5) Mr. Snow ate from Plaintiff plate during professional dinners with clients present 6) Mr. Snow requested Plaintiff to accompany him on shopping errands 6) Plaintiff was followed by Mr. Snow at company events; 7) Mr. Snow waited for Plaintiff, during a National Sales Meeting on a

4

secluded path, knowing she was meeting other female members at the pool area, he then grabbed her by the waist and pushed her into an area off the path that was unseen, Mr. Snow's body blocked the path back to the pool area (Plaintiff is a petite person, and Snow a larger man) while Plaintiff froze, then shook with fear; 8) Mr. Snow during sales meetings followed Plaintiff, arranged to be seated next to her, sat next to her and wrote on her bare shoulder in pen during a national sales meeting 9) Mr. Snow indicated to Plaintiff's coworkers that he was having sexual relations with Plaintiff 10) Mr. Snow told she was "unpromotable" 11) Mr. Snow refused to consider Plaintiff for promotion and denied the promotion even though Plaintiff was substantially more qualified than male candidates selected; 12) had policies selectively enforced against her in the calculations determining the winner of a sales contest, precluding her from collecting earned compensation; 13) was denied her former position when requested after a transfer to another division, and 14) was subject to other acts of discrimination and retaliation.

16. In addition to being subjected to sexual harassment, hostile work environment, constructive discharge, discrimination and retaliation based on her gender, Plaintiff was subjected to continuous and disparaging comments made to her and then after her constructive discharge to her new supervisor as well as her new VP of Sales in the EKOS division.

17. Plaintiff immediately, and frequently requested that the advances, behaviors and treatment cease.

18. Plaintiff formally complained of Mr. Snow's unwanted advances to Defendant in August of 2013, she reported the conduct to the Vice President of HR Lorraine Haslip, who never returned her calls, she reported her concerns to the HR Hotline, to HR representatives, to her direct supervisor as well as to other managers within Defendants company.

19. Defendant's management did not respond, Defendant did not properly investigate or resolve Plaintiff's complaint of sexual harassment, hostile work environment and discrimination or take any measures to prevent retaliation.

20. Defendant's management condoned acts of sexual harassment within the work place, perpetuated such conduct with a lack of consequences after notification and failed to maintain any meaningful policy against sexual harassment and/or failed to intervene and prevent future sexual harassment, discrimination and retaliation

21. In close proximity to Plaintiff's complaint of sexual harassment, Plaintiff was denied a promotion for completely pretextual reasons.

22. Plaintiff was constructively discharged by an official act of her supervisor.

23. Plaintiff was denied a request to continue in her position post constructive discharge. After this denial she was forced to continue performing her old job as well as train for her new position within the EKOS division. She was also forced to train her replacement.

24. Plaintiff was subjected to a hostile work environment and retaliatory treatment following the constructive discharge when her request was denied by Mr. Snow. This denied her the benefit of her successful and lucrative sales territory.

25. Plaintiff was denied compensation in the form of contest winnings and rewards.

26. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

27. Mr. Snow's position at the time of the sexual harassment, retaliation, discrimination and constructive discharge was as Senior Vice President of Sales for the US Division, with Mr. Gennaro and Mr. Funderburk reporting to him directly. Mr. Schnieder's

position was President of US Operations and in that position he had direct supervisory responsibilities for Mr. Snow.

28. Beginning on or about April of 2013 and continuing until November of 2013, Mr. Brad Snow made unwanted advances of a sexual nature, including requests to travel, have lunch, dinner, late night and weekend phone calls, texts and requested excursions with Plaintiff.

29. Plaintiff indicated that she felt uncomfortable with the attentions and requests, and was told by Mr. Snow falsely that this was "normal" and that these types of requests were being made to the entire sales team. Plaintiff also learned that Mr. Snow had initially inquired as to Plaintiffs age, marital status and physical characteristics.

30. Mr. Snow made representations to others in the company that he had relations with Ms. Schall, an unmarried, extremely religious individual.

31. Plaintiff repeatedly asked that the requests of meetings, lunches, dinners, and other excursions cease and that Mr. Snow work through her direct supervisor Lance Funderburk should he require information regarding her territory in Florida. Snow refused. Defendants conduct through it's agent Mr. Snow was intentional, wanton, willful, reckless and outrageous in its treatment of Plaintiff.

32. Mr. Snow dogged Plaintiffs steps at every company meeting and even going so far as to arrange seating next to her during national sales meeting, doodling with a ballpoint pen on her bare shoulder. Plaintiff was approached by several individuals asking if she was in a relationship with Mr. Snow, given his behaviors towards her.

33. Plaintiff complained to Defendant via Human Resources, her direct supervisor, and other supervisors and by means of the employee hotline. Plaintiff's direct manager, Lance Funderburk was warned by other senior managers that Plaintiff was being harassed. Plaintiff's

manager did not promptly report the complaints to his supervisor (who was the harasser), nor to HR.

34. Plaintiff was never formally provided information regarding her complaints other than a perfunctory 3-sentence email concluding the matter. Plaintiff was never informed of any investigation or resulting actions taken.

35. Shortly after Mr. Snow became aware of the complaints regarding his behavior and Plaintiff's identity in making the complaints, he became hostile in his treatment of Plaintiff. He was verbal and open with his dislike of Plaintiff during meetings, teleconferences creating an intolerable work environment for Plaintiff. Defendant through it's agent Mr. Snow intentionally and willfully created an intolerable environment for Plaintiff.

36. Mr. Snow made derogatory comments regarding Plaintiff's religious affiliations, status as an unmarried and childless female. For example, Mr. Snow asked Plaintiff a question in a very derogatory manor during a teleconference with the entire sales team in a discussion he was leading regarding any issues with travel on a Sunday. Mr. Snow asked "what do you do all day on Sunday…sit around and watch Joel Osteen" he made this after commenting "why should you care if you had to travel on a Sunday as you have no family".

37. Shortly after Plaintiff's complaint of sexual harassment, to Defendant's management, Plaintiff was told by Mr. Snow that she was not "promotable" for completely pretextual reasons. Plaintiff was very interested in advancing her career. Career advancement opportunities were one of the reasons she took the position with Defendant. In a conversation with Mr. Snow regarding an open Regional Manager position she was instructed, "not to bother" as the position in question required relocation. Plaintiff later learned that the male who was

promoted to the position did not relocate. Defendants conduct via it's agent Mr. Snow was intentional, willful, reckless and outrageous.

38. The stress of the hostile environment caused Plaintiff to lose weight, seek mental health professionals, and seek counseling from her minister and other co workers on how to salvage her career and reputation. Plaintiff was advised by her direct supervisor, that the situation with Mr. Snow would likely not improve and she should seek another position elsewhere, Plaintiff was told to seek a position elsewhere specifically to avoid Mr. Snow and his treatment of her given his position of Senior Vice President of Sales for the US. Plaintiff's performance record, and her excellent reputation with her customers worked in her favor and she transferred to the Ekos Division within BTG on January 15th, 2014.

39. After approximately a week in her new position Plaintiff requested to be returned to her former position. She spoke directly to her former supervisor Lance Funderbuck who was concerned Mr. Snow would reject Plaintiff's request. Plaintiff in fact was still completing all functions of the position as no replacement had been hired. Plaintiff was told that Mr. Snow would make the decision whether or not to allow her to return to her former position. Mr. Snow responded immediately with a negative response citing the reason it "wouldn't look good" given her complaints.

40. She continued to perform in her position for the next three months, winning a sales competition and increasing revenues and training her replacement. Defendant denied Plaintiff's request to return, refused her request to compensate her for her sales contest winnings and forced her to perform her former duties as well as the duties of her new position with the EKOS division. Plaintiff continued to perform both jobs for several months and trained her replacement.

41.     After Plaintiff's transfer to the Ekos division, she learned of another Regional Manager position being created in her former division. Plaintiff expressed interest.

42.     Plaintiff was prevented from applying, and very strongly discouraged from questioning the job posting process for this regional manager position.  Plaintiff was told completion of company sponsored leadership management training and relocation were required, and as she had not attended the leadership program and was not interested in relocating she would not be eligible.  As one of the top ranked sales professionals within the organization, and one with the most experience in selling Defendants products, Plaintiff should have been a strong contender, but was not permitted to apply.  The selected male candidate did not attend the company-sponsored training nor did he relocate.

43.     Defendant also fails to meet three of its own stated Core Values as listed on its Company website of Honesty, Openness and Integrity.

44.     Plaintiff complained to her direct supervisor that company procedure was not followed and that there was neither opportunity nor encouragement to apply.

45.     Plaintiff had won several sales contests including Presidents Club, which entitled her to a significant cash bonus.  Mr. Snow adjusted the rules, and as a result even though she won, and was announced as the winner at a sales meeting, Plaintiff did not collect any revenue or bonus due to the discriminatory and retaliatory change in rules.  In addition there was a trip associated with the Presidents Club award, Plaintiff inquired as to whether or not she could participate in this reward, and was told that Mr. Snow's refused to allow her to participate.  So even though she was responsible for the revenue and account closures to win the award she was precluded from receiving any compensation.

## Count I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")

**([1] Sexual Harassment; [2] Hostile Work Environment; [3] Retaliation [a] Failure to Promote [b] Constructive Discharge [c] Failure to Rehire [c] Withholding of compensation [d] Disparagement to future employer)**

46.     Defendant's management failed to investigate, remediate or intervene even after multiple complaints were filed by Plaintiff.

47.     Defendant did only a perfunctory investigation, if any and did not complete any form of Title VII training until over 6 months after complaints were received, after Plaintiff had transferred to the Ekos division, been denied promotions, compensation and her position.  The training that was provided was only a topic that was covered during a small portion of a one-day leadership program.  The only support provided to Plaintiff that her complaints were being taken seriously was a cryptic email communicating that the investigation was complete and no action was required.

48.     Defendant conducted an inept investigation and inadequate remediation that did not address the complaints and concerns of Plaintiff.  Defendants handing of the investigation and subsequent meetings with Mr. Snow were not adequate to address the seriousness of the issues with Mr. Snow.

49.     Defendant's actions as aforesaid constitute violations of Title VII and PHRA.

**Count II**
**<u>Violations of Title VII of the Civil Rights Act of 1964 and Pennsylvania Human Relations Act (PHRA)</u>**
**(Constructive Discharge)**

50.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.     Plaintiff was subjected to severe, pervasive and discriminatory treatment and was constructively discharged as a result.  Plaintiff found the environment so intolerable so as to make her continued employment as a territory sales representative under Defendant unbearable

and impossible for a reasonable female in her position. She was told specifically by her direct manager that he had no expectation that this situation would change, and that her only option was to seek employment elsewhere.

52. These actions as aforesaid constitute violations of Title VII and PHRA.

## Count III

## Violations of Pennsylvania Human Relations Act (PHRA)

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Senior leaders of Defendant's organization subjected plaintiff to severe and pervasive sexual harassment, such that she was subjected to a hostile work environment that resulted in constructive termination and post employment retaliation.

55. Plaintiff specifically complained to Defendant's management, including but not limited to her direct supervisor, other supervisors within the sales force, the perpetrator Mr. Brad Snow, Vice President of Sales US North Division, Human Resources, the HR Hotline. Plaintiff was denied her position and a promotion as a result of retaliation for making said complaints. Plaintiff suffered career, reputation and physical and emotional harm as a result of the sexual harassment, hostile work environment, retaliation, and constructive discharge.

56. Additionally, Defendant's management failed to investigate, remediate or intervene in any capacity to ensure an environment free from harassment, discrimination, and retaliation.

57. These actions constitute violations of the PHRA.

## Jury Demand

Plaintiff demands a trial by jury as to all issues, counts and claims in this action.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against Defendant;

A.	Compensating Plaintiff, reimbursing Plaintiff, and making Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

B.	Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to punitive damages and damages for her emotional distress);

C.	Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

D.	Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

	Respectfully submitted,

	**KindtLaw LLC**


	By:	_____
		Stephanie Kindt (Id. No. 81837)
		30 South 15th Street
		Philadelphia PA, 19151
		(215) 514-2104

Dated: November 12th, 2015